CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
1/19/23
Laura A. Austin, CLERK
BY: s/ ELLA SURBER
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

|  |  |
|---|---|
| ELVIRA REYES-HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> MONSANTO COMPANY, wholly owned by BAYER CORPORATION; BAYER CORPORATION; HOLLAND LAW FIRM LLC; KETTERER, BROWNE & ASSOCIATES, LLC, fka KETTERER, BROWNE & ANDERSON LLC; and GED LAWYERS LLP, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:23CV1 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR VIOLATIONS OF 42 U.S.C § 1981**

Introduction

1. This case is about Plaintiff Elvira Reyes-Hernandez's rights under the Civil Rights Act of 1866—to make and enforce contracts regardless of citizenship—and about how Monsanto and Bayer acted, *together with Plaintiff's own lawyers*, to deprive her of those rights.

2. Ms. Reyes-Hernandez is a farmworker and resident of Virginia. She worked for years with Monsanto's weed-killer Roundup® on Virginia tree farms. In 2019, she was diagnosed with cancer; and she believes that exposure to Roundup® caused her cancer. Following her diagnosis, she made a legal services retainer contract with the three Defendant Law Firms to sue Monsanto for causing her cancer. Similar lawsuits have been filed against Monsanto by tens of thousands of other Roundup® users.

1

3. In 2020, Plaintiff was offered an opportunity to settle under a Settlement Program funded by Bayer, Monsanto's corporate parent, which allocated $412.8 million—or an average of $120,000 per client—to pay damages to the Defendant Law Firms' 3,000-plus clients and the law firms' fees. The Settlement Program offered to Plaintiff was part of Bayer's larger effort to resolve all Roundup® product liability litigation, for which it had set aside approximately $9 billion. Ms. Reyes-Hernandez accepted the settlement offer—in exchange for releasing her claims—and signed on.

4. Then the Defendants reneged. It turns out that Monsanto and Bayer were restricting the Settlement Program to United States citizens only. Like many farmworkers in the U.S., however, Ms. Reyes-Hernandez is not a United States citizen. And so, seven months after she signed onto the Program, her lawyers told her she was *ineligible* because she was not a U.S. citizen. And instead of honoring their contractual commitment to litigate her claim, they abruptly *dropped* her as a client and *dismissed* her from the lawsuit they had brought on her behalf. These actions left Plaintiff without settlement, without legal representation, and without the lawsuit she'd contracted with the lawyers to bring, all in blatant violation of her civil rights, under 42 U.S.C. § 1981 of the Civil Rights Act of 1866, to make and enforce contracts regardless of alienage.

5. Plaintiff sues Monsanto, Bayer, and the three law firms to enforce these rights. She seeks damages, as well as declaratory and injunctive relief.

## Jurisdiction and Venue

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because it poses questions that arise under the U.S. Constitution and the laws of the United States.

7. This Court has authority to grant declaratory and other proper relief under 28 U.S.C. §§ 2201 and 2202.

8. This Court has personal jurisdiction over all Defendants pursuant to Va. Code Sec. 8.01-328.1 and the Due Process Clause of the Fourteenth Amendment. This District is Plaintiff's residence and the situs of her injury in the underlying tort litigation discussed herein. Monsanto (and its parent company, Bayer) place their products, including Roundup®, into the stream of commerce with the expectation that they will be sold and used nationwide, including in the District. In fact, Monsanto sold Roundup® in the District for agricultural use by Plaintiff's employers, causing Plaintiff's exposure and injury. The Defendant Law Firms contracted to represent clients across the country (establishing themselves as those clients' fiduciaries); and Monsanto and Bayer offered the Roundup® Settlement Program to litigants across the country. Thus, all Defendants can reasonably have anticipated litigation connected with disputes over the terms of the representations and settlement program, including litigation with individuals like Plaintiff who live in the District.

9. Moreover, the Defendant Law Firms engaged in an ongoing contractual and fiduciary relationship with Plaintiff, who they knew was a resident of the District, by contracting to represent her and representing her in the underlying tort litigation. In carrying out that representation, the Defendant Firms directed communications to Plaintiff in the District, including communications regarding the original retainer agreement, the Roundup® Settlement Program, and the Firms' termination of their retainer agreement and dismissal of the claim they had brought on Plaintiff's behalf, and they could reasonably anticipate litigating in the District if a dispute arose in connection with settlement or the retainer agreement.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the District. Specifically, Plaintiff at all relevant times resided in the District. She was exposed to Roundup, injured, and treated for the injury in the District; and all of the communications she had with Defendants were had, at her end, in the District.

Parties

11. Plaintiff is a resident of the Commonwealth of Virginia. She was exposed to Roundup® over 2015 to 2018 while employed as a field worker on Virginia tree farms, and diagnosed with Non-Hodgkin Lymphoma ("NHL") in 2019.

12. Monsanto is a Delaware corporation with headquarters and principal place of business in St. Louis, Missouri. At all relevant times, Monsanto conducted business throughout the United States, including manufacturing, marketing, testing, promoting, selling, and/or distributing Roundup® for commercial agricultural use.

13. Bayer is an Indiana corporation with headquarters and principal place of business in Whippany, New Jersey. In or around June 2018, Bayer acquired Monsanto as part of a multi-billion dollar merger.

14. Defendant Holland Law Firm LLC is a Missouri limited liability company with its principal place of business in St. Louis, Missouri.

15. Defendant Ketterer, Browne and Associates, LLC (fka Ketterer, Browne & Anderson, LLC) is a Maryland limited liability company with its principal place of business in Bel Air, Maryland.

16. Defendant Ged Lawyers LLP is a Florida limited liability partnership with its principal place of business in Boca Raton, Florida.

Factual Allegations

A. <u>The Defendant Law Firms entered a contract with Plaintiff to pursue her claims against Monsanto, and filed a lawsuit on her behalf</u>.

17. Plaintiff performed field work on Virginia tree farms from 2015 through 2018. Her job duties included spraying Monsanto's Roundup® weed-killer on a regular basis for several consecutive months each year.

18. In 2018, Plaintiff developed a painful swelling in her right neck and in April 2019 she was diagnosed with NHL. She was treated by chemotherapy in 2019 and is presently in remission, subject to recurrence.

19. Plaintiff, believing that her exposure to Roundup® caused her NHL, retained the Defendant Law Firms to sue on her behalf pursuant to an "Attorney Contingency Fee Agreement." The Defendant Firms presented this agreement to Plaintiff and she signed it in June 2019. Upon information and belief, Plaintiff was one of thousands of clients for whom the Defendant Firms agreed to bring similar Roundup® lawsuits against Monsanto.

20. On July 29, 2019, the Defendant Firms sued Monsanto on behalf of Plaintiff and twenty-four (24) co-plaintiffs in the Circuit Court for St. Louis County, Missouri. *See Jesse Allen, et al. v. Monsanto Company*, Case Number 19SL-CC03134 (21st Jud. Cir. St. Louis County, Mo.). The complaint alleges that Defendant Monsanto's wrongful acts and omissions caused Plaintiff to suffer damages including severe and permanent physical and emotional injuries; pain and suffering; economic loss; and significant expenses for medical care and treatment.

B.     <u>Defendants established a Roundup® Settlement Program to resolve claims, but excluded Plaintiff from participation because she was not a United States citizen</u>.

21.   More than 100,000 individuals have brought claims similar to Plaintiff's against Monsanto asserting physical injury and other harms caused by exposure to Roundup®.

22.   Around June 2020, Bayer (which had acquired Monsanto) reached agreement with many of the law firms representing the claimants in these lawsuits—including the Defendant Firms—to establish a Roundup® Settlement Program. The program was part of a larger effort, announced by Bayer in 2020, to substantially resolve the outstanding litigation against Monsanto, for which Bayer had set aside approximately $9 billion to resolve the Roundup® litigation.

23.   Under the Settlement Program, Monsanto agreed to pay an aggregate sum negotiated with the firms to settle the firms' "client inventories." The aggregate settlement would be apportioned among the clients by a Claims Administrator and Special Master using a points matrix based on the type of injury sustained by a Roundup® client and a list of key factors including years of exposure and treatment history. Participating claimants would be required to release Monsanto from all Roundup®-related claims.

24.   Under the terms of the Settlement Program, Monsanto agreed with the Defendant Firms to pay a total maximum sum of $412,800,000.00 to be apportioned among the Firms' 3,440 claimants.

25.   At the Defendant Firms' recommendation, Plaintiff opted to participate in the Settlement Program in late 2020 by completing and submitting, to the Firms, an "Enrollment and Eligibility Affidavit Form" and a "Confidential Release, Indemnity, Assignment, and Settlement Agreement and Covenant Not to Sue." These documents were template forms prepared by the Defendant Firms in coordination with Monsanto and Bayer.

26. The Settlement Program's "Enrollment" form required applicants to indicate their citizenship status; and Plaintiff truthfully indicated that she was not a United States citizen.

27. The Defendant Firms countersigned the forms in late 2020.

28. Then, in July 2021, the Defendant Firms notified Plaintiff that she was excluded from the Roundup® Settlement Program because she was not a United States citizen.

29. On July 27, 2021, and for the same reason, the Defendant Firms disengaged from representing Plaintiff and unilaterally dismissed Plaintiff's claims in the *Jesse Allen, et al. v. Monsanto Company* matter, without first asking her or obtaining her consent. The Defendant Firms informed Plaintiff by letter that, "United States citizenship is required in order for us to continue pursuing your claim" and that, because Plaintiff was not a United States citizen, the Firms "will not be able to continue pursuing your case any further." *See* Ex. A (July 27, 2021 letter from the Holland Law Firm to Elvira Reyes-Hernandez).

30. The Defendant Firms did *not* inform Plaintiff that, in fact, she had a right (regardless of citizenship) to pursue her claim in court, or that she had only one year from the date of dismissal to refile. *See* R.S.Mo. 516.230. Nor was Plaintiff offered assistance in finding new counsel to represent her.

31. Plaintiff was ultimately able to find new counsel to pursue her Roundup® claim and, on July 22, 2022, the claim was refiled, and currently remains pending. *See Elvira Reyes-Hernandez v. Monsanto Co.*, Case No. 22SL-CC03416 (21st Jud. Cir. St. Louis County, Mo.).

32. Upon information and belief, Monsanto and Bayer, in agreement with many law firms representing plaintiffs in the pending lawsuits against Monsanto, including the Defendant Firms, have excluded non-United States citizens from the Roundup® Settlement Program because of their alienage. Roundup® products are most heavily applied in agricultural settings

7

by agricultural workers—most of whom, like Plaintiff, are non-United States citizens. Yet residential Roundup® users have comprised the great majority of persons suing and then settling with Monsanto. In other words, those individuals with some of the worst exposures to Roundup® have been kept out of the Settlement Program, and they are being kept out because they are not United States citizens.

C. <u>Defendants' actions as described herein have directly and proximately caused Plaintiff injury</u>.

33. As a direct and proximate result of Defendant Monsanto's wrongful acts and omissions, as described in Plaintiff's complaint in *Jesse Allen, et al. v. Monsanto Company,* Case Number 19SL-CC03134, 21st Jud. Cir. St. Louis County, Mo. (filed July 29, 2019), Plaintiff's damages include: severe and permanent physical and emotional injuries; pain and suffering; economic loss; and significant expenses for medical care and treatment.

34. As a direct and proximate result of Defendants' refusal—because Plaintiff is a non-United States citizen—to make and enforce a settlement contract resolving Plaintiff's complaint in *Jesse Allen, et al. v. Monsanto Company, et al.*, Defendants (the Defendant Law Firms, Monsanto, and Bayer) denied Plaintiff the opportunity to receive fair compensation for the damages she suffered.

35. Defendants have further caused Plaintiff injury by forcing her to retain new counsel; file a new lawsuit reasserting the claims she originally asserted in *Jesse Allen, et al. v. Monsanto Company*; and engage in protracted contested litigation rather than participate in the Roundup® Settlement Program.

FIRST CAUSE OF ACTION
Violation of 42 U.S.C. § 1981 for denying Plaintiff the right to
enforce an attorney-client retainer agreement to pursue litigation
(against Defendant Law Firms)

36. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs.

37. Pursuant to the guarantees of 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"

38. For purposes of 42 U.S.C. § 1981, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

39. Plaintiff is, and was at all relevant times, a "person[] within the jurisdiction of the United States," and therefore entitled to the same enumerated rights under 42 U.S.C. § 1981 as "white citizens."

40. Plaintiff, a non-United States citizen, is, and was at all relevant times, a member of a protected class under 42 U.S.C. § 1981, entitled to the same enumerated rights as enjoyed by "white citizens," including the same right to "make and enforce contracts."

41. Plaintiff's right to "make and enforce contracts" on an equal basis with white citizens included the right to make and enforce a legal services retainer contract with the Defendant Firms to pursue litigation against Defendants Monsanto and Bayer to recover compensation for Plaintiff's injuries sustained as a result of exposure to Roundup®.

42. In June 2019, Plaintiff entered into a legal services retainer contract with the Defendant Firms to pursue litigation against Defendants Monsanto and Bayer to recover compensation for Plaintiff's injuries sustained from exposure to Roundup®.

43. The Defendant Firms refused to perform their obligations under the legal services retainer contract because Plaintiff is not a United States citizen. Specifically, and because Plaintiff is not a citizen, the Defendant Firms terminated the retainer contract, dismissed Plaintiff's claims against Monsanto, and refused to honor Plaintiff's election to settle her claim under the Roundup® Settlement Program.

44. The Defendant Firms violated 42 U.S.C. § 1981 by intentionally refusing, because Plaintiff is not a United States citizen, to perform their obligations under the legal services retainer contact to pursue litigation against Defendants Monsanto and Bayer to recover compensation for Plaintiff's injuries sustained as a result of exposure to Roundup®.

45. The Defendant Firms violated Plaintiff's rights under 42 U.S.C. § 1981 by intentionally refusing to provide Plaintiff with the same right to enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship as enjoyed by white citizens when they repudiated the contractual relationship and withdrew Plaintiff's claim because she is not a citizen.

46. In refusing to perform their obligations under the legal services contract because of Plaintiff's citizenship status, the Defendant Firms further deprived Plaintiff of her "right to sue," "be [a] part[y]," and "give evidence" on the basis of her citizenship status, in violation of 42 U.S.C. § 1981, as their withdrawal prevented Plaintiff from advancing her pending litigation against Monsanto and from participating in the Roundup® Settlement Program.

47. The Defendant Firms acted with malice or reckless indifference to Plaintiff's federally-protected rights.

48. As a direct and proximate cause of the Defendant Firms' actions, Plaintiff has suffered damages in an amount to be established at trial.

49. Plaintiff is entitled to recover damages to account for the full value of her losses, including emotional distress, lost wages, punitive damages, and other losses suffered by Plaintiff as a result of the Defendant Firms' conduct, along with reasonable attorneys' fees and costs of suit incurred in this action, pursuant to 42 U.S.C. § 1988.

SECOND CAUSE OF ACTION
Violation of 42 U.S.C. § 1981 for denying Plaintiff the right to make and enforce her agreement with Defendants to participate in the Roundup® Settlement Program
(against all Defendants)

50. Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs.

51. Pursuant to the guarantees of 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"

52. For purposes of 42 U.S.C. § 1981, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

53. Plaintiff is, and was at all relevant times, a "person[] within the jurisdiction of the United States," and therefore entitled to the same enumerated rights under 42 U.S.C. § 1981 as "white citizens."

54. Plaintiff, a non-United States citizen, is, and was at all relevant times, a member of a protected class under 42 U.S.C. § 1981, entitled to the same enumerated rights as enjoyed by "white citizens," including the same right to "make and enforce contracts."

55. Plaintiff's right to "make and enforce contracts" on an equal basis with white citizens included the right to participate in the Roundup® Settlement Program offered by Defendants Monsanto and Bayer, and to make and enforce a settlement agreement with Defendants Monsanto and Bayer to recover compensation under the Roundup® Settlement Program for injuries sustained as a result of exposure to Roundup®.

56. Plaintiff opted to participate in the Roundup® Settlement Program, and to make and enforce a settlement agreement with Defendants Monsanto and Bayer to recover compensation for injuries sustained as a result of exposure to Roundup in exchange for releasing her claims; specifically, plaintiff signed and submitted the Roundup® Settlement Program "Enrollment and Eligibility Affidavit Form" and a "Confidential Release, Indemnity, Assignment, and Settlement Agreement and Covenant Not to Sue." The "Enrollment and Eligibility Affidavit Form," which all Defendants had agreed to use to administer the Roundup® Settlement Program, explicitly asked for Plaintiff's citizenship status.

57. All Defendants intentionally denied Plaintiff the right to participate in the Roundup® Settlement Program, and to make and enforce a settlement agreement with Defendants Monsanto and Bayer to recover compensation for injuries sustained as a result of exposure to Roundup®, because Plaintiff is not a United States citizen.

58. All Defendants violated 42 U.S.C. § 1981 by intentionally refusing, because Plaintiff is not a United States citizen, to allow Plaintiff to participate in the Roundup®

Settlement Program, and to make and enforce a settlement agreement with Defendants Monsanto and Bayer to recover compensation for injuries sustained as a result of exposure to Roundup®.

59. All Defendants violated Plaintiff's rights under 42 U.S.C. § 1981 by intentionally refusing, because Plaintiff is not a citizen, to provide Plaintiff with the same right to enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship as enjoyed by white citizens.

60. The Defendants acted with malice or reckless indifference to Plaintiff's federally-protected rights.

61. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages in an amount to be established at trial.

62. Plaintiff is entitled to recover damages to account for the full value of her losses, including emotional distress, lost wages, punitive damages, and other losses suffered by Plaintiff as a result of Defendants' conduct, along with reasonable attorneys' fees and costs of suit incurred in this action, pursuant to 42 U.S.C. § 1988.

PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court:

(a) declare that Defendants' actions, in excluding Plaintiff from participation in the Roundup® Settlement Program and denying her right to make and enforce contracts relating to the Roundup® litigation because she is not a citizen of the United States, violated 42 U.S.C. § 1981;

(b) enjoin Defendants from denying non-United States citizens, including Plaintiff, the same rights to make and enforce contracts relating to the Roundup® litigation, including legal services retainer contracts and settlement agreements, as white citizens;

(c) enjoin Defendants from denying non-United States citizens, including Plaintiff, the same rights to sue and be a party to the Roundup® litigation, including the Roundup® Settlement Program, as white citizens;

(d) order Defendants to reinstate and pay Plaintiff the monetary settlement award that would have been allocated to her claim under the Roundup® Settlement Program to resolve her claim;

(e) award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert further injury during the pendency of this action, and to preserve the possibility of effective final relief;

(f) order Defendants to identify all individuals who have been excluded from participating in the Roundup® litigation or settling a claim relating to Roundup® due to their citizenship status, and to notify all such individuals of the potential violation of their rights under 42 U.S.C. § 1981 and that they may be entitled to relief;

(g) enter a permanent injunction to prevent future violations of 42 U.S.C. § 1981 by Defendants;

(h) award Plaintiff such damages as will fully compensate her for the economic loss, emotional distress, and deprivation of federal rights caused by Defendants' violation of 42 U.S.C. § 1981, including for forcing her to secure new counsel to refile her claim;

(i) award Plaintiff punitive damages;

(j) award Plaintiff her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(k) award Plaintiff prejudgment and post-judgment interest as permitted by law; and

(l) award Plaintiff such other relief as the Court deems just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

Respectfully submitted this 19th day of January 2023

/s/ Rachel C. McFarland

| | |
|---|---|
| Sarah E. Siskind (*PHV to follow*) | Rachel C. McFarland (VSB 89391) |
| ssiskind@lawmbg.com | rmcfarlnd@justice4all.org |
| Benjamin J. Blustein (*PHV to follow*) | Simon Sandoval-Moshenberg (VSB 77110) |
| bblustein@lawmbg.com | simon@justice4all.org |
| Paul S. Balik (*PHV to follow*) | Jason Yarashes (VSB 90211) |
| pbalik@lawmbg.com | jasony@justice4all.org |

14

MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle St., Ste. 350
Chicago, IL 60654
Telephone: (312) 751-1170
Fax: (312) 751-0438

Shawn Collins (*PHV to follow*)
shawn@collinslaw.com
Edward J. Manzke (*PHV to follow*)
ejmanzke@collinslaw.com
Margaret Galka (*PHV to follow*)
mgalka@collinslaw.com
THE COLLINS LAW FIRM, P.C.
1770 Park St., Ste. 200
Naperville, IL 60563
Telephone: (630) 537-1595
Fax: (630) 527-1193

Mark V. Dugan (*PHV to follow*)
Mark@duganschlozman.com
DUGAN SCHLOZMAN LLC
8826 Santa Fe Dr., Ste. 307
Overland Park, KS 66212
Telephone: (913) 322-3528
Fax: (913) 904-0213

LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA  22903
Telephone: (434) 977-0553
Fax: (434) 977-0558

Kathryn J. Youker (*PHV to follow*)
kyouker@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
   CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C.  20005
Telephone: (202) 662-8375
Fax: (202) 783-0857

Michael T. Kirkpatrick (*PHV to follow*)
mkirkpatrick@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, D.C.  20009
Telephone: (202) 588-7728